UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

|  |  |  |
|---|---|---|
| MICHAEL JAMES DELEO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:21-cv-00226-JAW |
| | ) | |
| MIRANDA S. JONES, ESQ. and | ) | |
| O'REILLY, GROSSO, GROSS & | ) | |
| JONES, P.C. | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER DENYING MOTION FOR SUMMARY JUDGMENT**

Defendants, a lawyer and a law firm, move the Court for summary judgment on a claim which alleges that they were negligent in their representation of the Plaintiff in an underlying suit, because they believe the Plaintiff has not put forth sufficient facts to prove causation. The Court denies the motion because the Plaintiff has provided enough evidence to allow a factfinder to decide in his favor, thereby precluding judgment as a matter of law.

## I.  PROCEDURAL AND FACTUAL BACKGROUND

### A.  Factual Background of the Underlying Suit

Sometime in the year 2000, after knowing Plaintiff Michael James DeLeo for many years, Anthony Vegnani joined Mass Medical Services, Inc. (Mass Medical) as a full-time employee. *Joint Stipulated Statement of Material Facts* ¶ 3 (ECF No. 31) (JSMF); *Defs.' Statement of Material Facts* ¶ 1 (ECF No. 32) (DSMF); *Pl.'s Resp. to Statement of Material Facts* ¶ 1 (ECF No. 35) (PRDSMF). Mass Medical is a

Massachusetts corporation, and Mr. DeLeo was its President at the time Mr. Vegnani joined.  JSMF ¶ 3; DSMF ¶ 1; PRDSMF ¶ 1.

In 2004, Mr. DeLeo and Mr. Vegnani both signed a document titled "Employment Agreement Between Michael DeLeo and Anthony Vegnani," JSMF ¶ 8, which did not name Mass Medical as a party.[1]  DSMF ¶ 3; PRDSMF ¶ 3.  The agreement, among other things, outlined Mr. Vegnani's role at Mass Medical as its new CEO, the compensation structure and equity accrual, and the terms regarding the voluntary and involuntary dismissal of either Mr. Vegnani or Mr. DeLeo, who remained Mass Medical's President.[2]  DSMF ¶ 4; PRDSMF ¶ 4.  Defendants Miranda S. Jones, Esq. and O'Reilly, Grosso, Gross, & Jones, P.C. (Jones Defendants) believe that Mr. DeLeo and Mr. Vegnani signed the employment agreement in their

---

[1]    DSMF ¶ 3 states: "In the agreement, Mass Medical Services was not named as party."  Mr. DeLeo denies DSMF ¶ 3, saying "The statement should be stricken. It contains a legal characterization as to the parties to the contract. Mr. Vegnani sued the company for breach of contract, the jury in the underlying action found the company liable for breach of contract and the Massachusetts Appellate Court noted that the company had 'duties and benefits' under the contract." PRDSMF ¶ 3.

DSMF ¶ 3 states a fact about the agreement and does not pronounce any legal conclusion about Mass Medical's liability or lack thereof.  The Court therefore finds that Mr. DeLeo's denial is beyond the scope of the fact and rejects his objection.

[2]    DSMF ¶ 4 states: "The agreement outlined Mr. Vegnani's role at Mass Medical Services, the compensation structure, equity accrual, and terms regarding the voluntary and involuntary dismissal of either Mr. Vegnani or Mr. DeLeo."  Mr. DeLeo admits that the agreement discusses these terms but denies "that the agreement reflects the entire scope of the terms of Mr. Vegnani's role at Mass Medical Services."  PRDSMF ¶ 4.

Mr. DeLeo further states that "the agreement discusses these terms as they reflect the rights and obligations of Mass Medical Services to and from Mr. Vegnani, as a party to the agreement. Mr. Vegnani sued the company for breach of contract, the jury in the underlying action found the company liable for breach of contract and the Massachusetts Appellate Court noted that the company had 'duties and benefits ' under the contract."  PRDSMF ¶ 4.

Although Mr. DeLeo's qualification is in part beyond the scope of the fact, the Court slightly alters DSMF ¶ 4 and includes "among other things" to indicate that the included portions of the agreement do not reflect the entire scope of the terms.

individual capacities.[3]  DSMF ¶ 2; PRDSMF  ¶ 2.  Mr. DeLeo disagrees; he believes

he signed as a representative of Mass Medical.  *See Resp. in Opp'n* (ECF No. 34) (*Pl.'s*

*Opp'n*) at 8.

 After Mr. DeLeo and Mr. Vegnani signed this document, Mr. DeLeo shared the

agreement with Mass Medical Services' corporate counsel, Robert Russell.  JSMF ¶

9.  Mr. Russell then reviewed the agreement and suggested creating a more formal

agreement for the parties.  JSMF ¶ 10.  Mr. Russell drafted corporate documents for

Mr. DeLeo, Mr. Vegnani, and Mass Medical Services, which were provided to Mr.

DeLeo and Mr. Vegnani in October 2006, but were never signed or executed.  JSMF

¶¶ 11, 12.

 Throughout this time, Mass Medical, not Mr. DeLeo, employed Mr. Vegnani.

*Pl.'s Statement of Additional Material Facts* ¶¶ 8, 9 (ECF No. 35) (PSAMF); *Defs.'*

*Reply to Additional Statement of Material Facts* ¶¶ 8, 9 (ECF No. 36) (DRPSAMF).

Mr. DeLeo never issued a W-2 IRS form to Mr. Vegnani. PSAMF ¶ 10; DRPSAMF ¶

---

[3] DSMF ¶ 2 provides that "[b]oth Mr. Vegnani and Mr. DeLeo signed the document titled 'Employment Agreement Between Michael DeLeo and Anthony Vegnani' in their individual capacities on two separate occasions."

 Mr. DeLeo qualifies DSMF ¶ 2 by saying:

> Plaintiff admits that both he and Mr. Vegnani signed the document. The balance of the statement should be stricken. It contains an inappropriate legal characterization ("in their individual capacities"). In addition, to the extent the statement is meant to imply that Mass Medical Services, Inc. was not a party to the contract, Mr. Vegnani sued the company for breach of contract, the jury in the underlying action found the company liable for breach of contract and the Massachusetts Appellate Court noted that the company had "duties and benefits" under the contract.

PRDSMF  ¶ 2.

 Although Mr. DeLeo's qualification is in part beyond the scope of the fact, the Court grants Mr. DeLeo's qualification, insofar as the original fact might have read as a legal characterization, and updates the fact to reflect that "in their individual capacities" was the perception of the Jones Defendants.

10.   In time, Mr. Vegnani filed a claim for unemployment benefits with the Commonwealth of Massachusetts and a notice of his unemployment claim was sent to his employer, Mass Medical, not Mr. DeLeo personally.  PSAMF ¶ 11; DRPSAMF ¶ 11.

In 2015, Mr. Vegnani filed a lawsuit based on the aforementioned employment agreement, against his employer Mass Medical in the Plymouth County Superior Court in the Commonwealth of Massachusetts.  JSMF ¶¶ 4, 6, 8; PSAMF ¶ 1; DRPSAMF ¶ 1.  Mr. Vegnani's original Verified Complaint named only Mass Medical as a defendant, and it alleged, among other things, that he had entered a contract, styled as an Employment Agreement, with Mass Medical.[4]  PSAMF ¶ 2; DRPSAMF ¶ 2.  Mr. Vegnani's original Verified Complaint further alleged that Mass Medical breached the Employment Agreement by failing to pay him severance when his employment was terminated.  PSAMF ¶ 3; DRPSAMF ¶ 3.

Thereafter, Mr. Vegnani filed an Amended Complaint that named Michael DeLeo as an additional defendant, PSAMF ¶ 4; DRPSAMF ¶ 4; JSMF ¶ 17, and alleged that there were three parties to the Employment Agreement: Mr. Vegnani, Mass Medical and Mr. DeLeo.[5]  PSAMF ¶ 5; DRPSAMF ¶ 3.  The amended complaint

---

[4]      PSAMF ¶ 2 provides: "Mr. Vegnani's original Verified Complaint named only Mass Medical Services, Inc. as a defendant, and alleged, among other things, that he had entered into a contract, styled as an Employment Agreement, with Mass Medical Services, Inc."
      The Jones Defendants admit that the original Verified Complaint named only Mass Medical Services as a defendant but contend that "[t]he remainder of the statement should be striken, as it contains legal characterizations as to the parties to the contract."  DRPSAMF ¶ 2.
      The Court concludes that there is no legal characterization present in PSAMF ¶ 2 as it merely recounts a fact, namely the contents of the complaint.  Accordingly, the Court admits the fact without alteration.
[5]      PSAMF ¶ 5 states: "In the Amended Complaint, Mr. Vegnani alleged that there were three parties to the Employment Agreement: himself, Mass Medical Services, Inc. and Mr. DeLeo."

alleged three counts against Mass Medical and Mr. DeLeo: 1) breach of contract, 2) violations of the Massachusetts Wage Act, and 3) unfair and deceptive conduct. JSMF ¶ 6.

Mr. DeLeo retained Attorney Robert Goulet to represent Mass Medical's interests in the lawsuit. JSMF ¶ 7. Prior to filing an answer, Attorney Goulet filed a motion to dismiss all three counts of the complaint. JSMF ¶ 13.

## B. Miranda S. Jones and O'Reilly, Grosso, Gross and Jones, P.C.'s Representation of Michael James DeLeo

After Attorney Goulet's motion to dismiss was granted in part, *id.*, Mr. DeLeo and Mass Medical informed Attorney Goulet that Mr. DeLeo's friend and personal acquaintance, Attorney Miranda S. Jones, would be taking over the representation of Mr. DeLeo and Mass Medical in the suit moving forward. JSMF ¶¶ 4, 5, 14. On May 4, 2016, Attorney Jones—who is licensed to practice law in the Commonwealth of Massachusetts, has been associated with the law firm O'Reilly, Grosso, Gross and Jones, P.C. since 2013, and became a partner there in 2015—entered her appearance on behalf of Mass Medical and filed an assented to motion for leave to file answer late. JSMF ¶¶ 1, 2, 15.

---

The Jones Defendants admit PSAMF ¶ 5 to the extent it "summarizes Plaintiff's allegations in the Amended Complaint," but contend that "[t]he remainder of the statement should be stricken, as it contains legal characterizations as to the parties to the contract." DRPSAMF ¶ 5.

The Court concludes this qualification is frivolous, as PSAMF ¶ 5 clearly limits itself to what Mr. Vegnani alleged in the complaint, and admits the fact without modification.

Between May and September 2016, Attorney Jones and counsel for Mr. Vegnani engaged in conversations regarding potential mediation and settlement of the matter but the case was not ultimately settled.[6, 7]  JSMF ¶ 16.

In September 2016, Ms. Jones filed an Answer and Counterclaim to Mr. Vegnani's amended complaint on behalf of Mass Medical and Mr. DeLeo, including six counts against Mr. Vegnani for his breach of duties owed to Mass Medical.[8]  DSMF ¶ 7; PRDSMF ¶ 7.

In November 2016, Mr. Vegnani filed a motion for partial summary judgment as to Count I, a breach of contract claim against Mass Medical, and as to Count II, a breach of contract claim against Mr. DeLeo.  JSMF ¶ 18.  In opposition, Attorney Jones argued that the parties had not formed a valid contract and chose not to raise any arguments as to Mr. DeLeo's individual liability to Mr. Vegnani.  JSMF ¶ 19.  On

---

[6]     DSMF ¶ 10 states: "At mediation Mr. Vegnani offered to settle the case if both parties dismissed all their claims without any payment, which provided an opportunity to resolve the matter without the risk of any personal exposure to Mr. DeLeo."

Mr. DeLeo argues that DSMF ¶ 10 should be stricken as the "mediation proceedings were confidential pursuant to Massachusetts statute."  PRDSMF ¶ 10 (citing Mass. Gen. Laws ch. 233, § 23C; and *Fehr v. Kennedy*, 387 F. App'x 789 (9th Cir. 2010)).

M.G.L.A. § 23C states that "[a]ny communication made in the course of and relating to the subject matter of any mediation and which is made in the presence of such mediatory by any participant, mediator, or other person shall be a confidential communication and not subject to disclosure in any judicial or administrative proceeding."  As DSMF ¶ 10 indicates that Mr. Vegnani's offer occurred "[a]t mediation," it "shall be a confidential communication" and is "not subject to disclosure" in a judicial proceeding like the one currently before the Court.  The Court accordingly strikes DSMF ¶ 10.

[7]     DSMF ¶ 11 offers that "Mr. DeLeo refused to accept this offer."

Mr. DeLeo argues that DSMF ¶ 11 should be stricken as "[t]he mediation proceedings were confidential pursuant to Massachusetts statute."  PRDSMF ¶ 11.

As the offer referenced is the one contemplated in DSMF ¶ 10, which occurred "[a]t mediation," the Court strikes DSMF ¶ 11 for the same reason indicated in footnote 7.

[8]     Without any citation to corroborate his assertion, Mr. DeLeo qualifies DSMF ¶ 7, saying that "[t]here were only five counts asserted in the Counterclaim."  PRDSMF ¶ 7.  Upon reviewing the Jones Defendants' citation for DSMF ¶ 7, *Stipulated R.*, Attach. 7, *Defs. Answer and Countercls.* (ECF No. 26), the Court finds there were six counts in the Answer and Counterclaim, and  accordingly denies Mr. DeLeo's qualification.

November 9, 2017, the Massachusetts Superior Court granted Mr. Vegnani's motion for partial summary judgment on these two counts.  JSMF ¶ 20.

Throughout the entirety of the litigation, Ms. Jones operated under the understanding that Mr. DeLeo could be held personally liable should the court or a factfinder determine that the contract was binding and had been breached.[9]  DSMF ¶ 8; PRDSMF ¶ 8.  Ms. Jones believed Mr. DeLeo was bound individually because he signed the contract individually, rather than as a representative of Mass Medical.[10]  DSMF ¶ 5; PRDSMF ¶ 5.  Prior to mediation and trial, Ms. Jones advised Mr. DeLeo of his potential personal liability in this matter,  JSMF ¶ 21, and advised him to settle the case prior to trial due to his potential exposure risk, including the risk that he could end up owing Mr. Vegnani $600,000 and a lien could attach to his Maine property.  DSMF ¶ 9; PRDSMF ¶ 9.

Mr. DeLeo, in email correspondence with Ms. Jones, wrote, among other things, that "[t]he argument is that I never personally hired Tony. I acted as a rep of

---

[9]     DSMF ¶ 8 states that "Ms. Jones, throughout the entirety of litigation, operated under the understanding that Mr. DeLeo was could be held personally liable, should the court or a fact finder determine the contract was binding, and had in fact been breached."

Mr. DeLeo objects, stating that "[t]his statement should be stricken. It is unclear what it is meant to say '. . . was could be personally liable . . .'"  PRDSMF ¶ 8.

Given the clauses that follow "was could be personally liable," which are written in the future conditional form, the sentence seems to clearly intend to mean that Mr. DeLeo could be personally liable. The Court concludes that "was could be personally liable" is ambiguous and slightly alters the fact by removing "was," a likely typographical error, to remove any ambiguity.

[10]     DSMF ¶ 5 states: "Ms. Jones believed Mr. DeLeo was bound individually to the contract because he signed the contract individually, rather than as an agent of Mass Medical."

Mr. DeLeo qualifies the statement because "Ms. Jones testified that Mr. DeLeo did not sign as a 'representative' of the company."  PRDSMF ¶ 5.

Ms. Jones used the word "representative," not "agent," during her testimony.  *Jones Dep.* At 150:19-151:2.  The Court accepts the qualification, updates DSMF ¶ 5 to reflect this, and otherwise admits the fact.

[Mass Medical]."[11]  PSAMF ¶ 6; DRPSAMF ¶ 6.  In other correspondence with Ms. Jones, Mr. DeLeo wrote, among other things: "Miranda in Tony's original claim he sued [Mass Medical] for wage claim [sic]. If the contract was with me why under his in [sic] admission did he not pursue me for wages . . ., because it was [Mass Medical]."[12]  PSAMF ¶ 7; DRPSAMF ¶ 7 (second, third, and fourth alterations in original).  When asked at her deposition whether she believed Mr. Vegnani could have sought unemployment benefits from Mr. DeLeo, Ms. Jones responded "no" and testified, "you would apply through the corporation where you work."  PSAMF ¶ 12; DRPSAMF ¶ 12.

After the Superior Court granted Mr. Vegnani's motion for partial summary judgment, Mr. Vegnani, Mr. DeLeo, and Mass Medical once again attempted to resolve the dispute through mediation but were unsuccessful.  JSMF ¶ 22.  Mediation and settlement negotiations did not progress due to the slow exchange of information between the parties regarding the valuation of the business.  DSMF ¶ 6; PRDSMF ¶ 6.

In April 2017, the matter went to trial before a jury in the Massachusetts Superior Court.  JSMF ¶ 23.  At trial, Ms. Jones did not raise any arguments or defenses regarding Mr. DeLeo's personal liability.  JSMF ¶ 24.  The first question on the special verdict form submitted to the jury was: "Did Mass Medical, Inc and/or Mr.

---

[11]     The Jones Defendants qualify this fact and argue that "[a]lthough Plaintiff has accurately quoted from the referenced email, the referenced document speaks for itself and must be viewed in its entirety."  DRPSAMF ¶ 6.  This objection is necessarily beyond the scope of the fact, yet the Court updates the fact, includes "among other things" to indicate that the statement is not the entirety of the email correspondence, and admits the fact.

[12]     The Jones Defendants qualify PSAMF ¶ 7 for the same reason as they qualify PSAMF ¶ 6.  *See* DRPSAMF ¶ 7.  The Court alters and admits PSAMF ¶ 7 for the reason explained in footnote 9.

DeLeo breach the contract with Anthony Vegnani?"  JSMF ¶ 25;  PSAMF ¶ 13;
DRPSAMF ¶ 13.  Ms. Jones believed the special verdict form allowed the jury to
decide whether or not there was a valid contract between the parties.  DSMF ¶ 12;
PRDSMF ¶ 12.  After deliberation, the jury affirmatively found that Mr. DeLeo had
breached the contract between himself and Mr. Vegnani.  DSMF ¶ 13; PSAMF ¶ 13.
The jury awarded Mr. Vegnani $464,952 for the breach of contract claims against Mr.
DeLeo and Mass Medical.  JSMF ¶ 26.  Ms. Jones filed a motion for a new trial on
May 4, 2018, which was denied.  JSMF ¶ 27.

## C.   Michael James DeLeo's Appeal and Post-Trial Motions with New Representation

Mr. DeLeo, with new representation, appealed the superior court's judgment
and its denial of his post-trial motions for a new trial and to amend the judgment.
DSMF ¶ 14; PRDSMF ¶ 14.  One of the grounds for this appeal was that Mr. DeLeo
could not be held personally liable under Massachusetts law.[13]  DSMF ¶ 14; PRDSMF

---

[13]     DSMF ¶ 14 offers that "Mr. DeLeo, with new representation, appealed the judgment from the court judgment and denial of the post-trial motions, one of the grounds being that Mr. DeLeo could not be held personally liable under Massachusetts law."

Mr. DeLeo qualifies DSMF ¶ 14, saying that "[n]either record citation references 'one of the grounds being that Mr. DeLeo could not be held personally liable under Massachusetts law.'"

Mr. DeLeo is correct that neither of the Jones Defendants' citations references the assertion that one of the grounds for the appeal was that Mr. DeLeo could not be personally liable under Massachusetts law.  *See Stipulated R.*, Attach. 17, 99:13-16 (*DeLeo Dep.*); *id.*, Attach. 1, 159:1-4 (*Jones Dep.*).

While the Court is under no obligation to independently search the record for a correct supporting citation when one has not been provided, *see* D. ME. LOC. R. 56(f), the Court nonetheless identified testimony during Ms. Jones' deposition, on the same page the Jones Defendants cite to, which demonstrates that the decision on appeal, read: "In any event, [the balance of DeLeo's arguments] appear to be without merit: (1) the agreement contemplated the duties of and benefits to DeLeo himself in addition to Mass Medical Services, Inc. and thus plainly bound him individually." *Jones Dep.* 159:5-10; *see also Vegnani v. Mass Med. Servs., Inc.*, 157 N.E.3d 101, at *1 (Mass. App. Ct. 2020).  As the Appeals Court of Massachusetts indicates that Mr. DeLeo argued he was not bound by the agreement, the Court correspondingly denies the qualification and admits the fact in its entirety as it is supported by the record before the Court, even though not precisely in the record citation offered by the Jones Defendants.

¶ 14.  The Appeals Court of Massachusetts affirmed the superior court's judgment and its denial of Mr. DeLeo's post-trial motions.[14]  DSMF ¶ 15.  In its affirmance, the Appeals Court indicated that "[t]he balance of DeLeo's arguments, [including his argument as to personal liability,] were not properly raised below and thus were waived."  DSMF ¶ 15; PRDSMF ¶ 15.  The Appeals Court added that the arguments "appear[ed] to be without merit" and that "the agreement contemplated the duties and benefits to DeLeo himself (in addition to Mass Medical Services., Inc.) and thus plainly bound him individually."  DSMF ¶ 15; PRDSMF ¶ 15.

---

[14]    DSMF ¶ 15 states: "In affirming the judgment and orders denying the post-trial motions, the court stated that Mr. DeLeo's argument as to personal liability was not only waived, as it was not properly raised below, but was 'without merit' because 'the agreement contemplated the duties and benefits to DeLeo himself (in addition to Mass Medical Services, Inc.) and thus plainly bound him individually."

Mr. DeLeo denies DSMF ¶ 15, arguing that "[t]he Massachusetts Appellate decision does not reference Mr. DeLeo's 'argument as to personal liability'; it references the 'balance of DeLeo's arguments.'  Furthermore, while the Appellate Court referenced 'duties and benefits' to both Mr. DeLeo and Mass Medical Services Inc., it does not indicate which party had the duty to pay severance." PRDSMF ¶ 15.

The Massachusetts Appellate decision does not explicitly write of Mr. DeLeo's argument as to personal liability and instead references the balance of Mr. DeLeo's arguments.  However, it is a step too far for Mr. DeLeo to argue that the Appeals Court of Massachusetts decision "does not reference" Mr. DeLeo's argument as to his personal liability.  The Appeals Court wrote:

> The balance of DeLeo's arguments were not properly raised below and thus are waived.  In any event, they appear to be without merit: (1) the agreement contemplated the duties of and benefits to DeLeo himself (in addition to Mass Medical Services, Inc.) and thus plainly bound him individually; and (2) the agreement, which contained no time limit on its face, was in effect at the time of Vegnani's termination.

*Vegnani*, 2020 WL 6166358, at *1 (internal citations omitted).  Although the Appeals Court addresses the balance of Mr. DeLeo's arguments, one of those arguments referenced is whether the agreement "bound him individually."  Therefore, the Court thinks it is plain as day that the Appeals Court of Massachusetts did in fact refer to Mr. DeLeo's argument as to personal liability, as it was part of the balance of his arguments.

The remainder of Mr. DeLeo's denial argues that the Appellate Court did "not indicate which party had the duty to pay severance."  This denial is beyond the scope of the fact and the Court declines to accept it.

Altogether then, the Court admits DSMF ¶ 15, as it is properly supported by the record before the Court, but the Court alters DSMF ¶ 15 as necessary to make clear what the Appeals Court of Massachusetts said regarding Mr. DeLeo's arguments.

**D.     The Present Suit**

On February 5, 2021, Mr. DeLeo voluntarily petitioned for bankruptcy under Chapter 11 of the Bankruptcy Code. *In re Michael James DeLeo*, No. 2:21-20025 (Bankr. D. Me. 2021), *Chapter 11 Subchapter V Voluntary Petition Individual* (ECF No. 1). On March 25, 2021, Mr. DeLeo filed a complaint against the Jones Defendants, alleging that they breached their duty of care and were negligent in their representation of him. *DeLeo v. Jones*, Adv. Proc. 2:21-2005 (Bankr. D. Me. 2021), *Compl.* (ECF No. 1). This alleged negligence included, but was not limited to, failing to assert that Mr. DeLeo could not be liable for breach of contract as Mr. Vegnani's employer. *Id.* Mr. DeLeo further alleges that as a direct and proximate result of this alleged negligence, he has sustained damages in the amount of the judgment against him, interest on that judgment, and attorney's fees. *Id.*

On July 15, 2021, Mr. DeLeo amended his complaint, *DeLeo v. Jones*, Adv. Proc. 2:21-2005 (Bankr. D. Me. 2021), *Am. Compl.* (ECF No. 17), and moved the United States Bankruptcy Court for the District of Maine to withdraw the case from its docket and remove it to the United States District Court for the District of Maine. *DeLeo v. Jones*, Adv. Proc. 2:21-2005 (Bankr. D. Me. 2021)*, Mot. for Withdrawal of Reference* (ECF No. 18). This request was granted. *DeLeo v. Jones*, Adv. Proc. 2:21-2005 (Bankr. D. Me. 2021), *Order Granting Mot. for Withdrawal of Reference* (ECF No. 22); ); *DeLeo v. Jones*, No. 2:21-cv-00226-JAW (D. Me. 2021), *Order Granting Mot. to Withdraw Reference* (ECF No. 1). On August 10, 2021, the Jones Defendants

answered, *DeLeo v. Jones*, No. 2:21-cv-00226-JAW (D. Me. 2021), *Answer to Compl. With Jury Demand* (ECF No. 3), and pre-trial motions practice and discovery began.

Scott Tucker, Esq., an expert designated by the Jones Defendants, JSMF ¶ 28, was asked at his deposition whether Ms. Jones' failure to raise the defense that Mr. DeLeo could not be held personally liable caused any eventual harm to Mr. DeLeo. DSMF ¶ 16. Mr. Tucker answered that it did not. *Id.*

Charles Kazarian, Esq., an expert designated by Mr. DeLeo, JSMF ¶ 29, testified during his deposition that his opinions were based on what "Ms. Jones or what the average qualified practitioner could have done with the facts here." DSMF ¶ 17; PRDSMF ¶ 17. Mr. Kazarian did not provide any testimony or offer an opinion regarding whether the court would have found favorably for Mr. DeLeo if Ms. Jones had raised the personal liability defense. DSMF ¶ 18; PRDSMF ¶ 18.

On March 23, 2023, the Jones Defendants filed a motion for summary judgment. *Mot. for Summ. J.* (ECF No. 33) (*Defs.' Mot.*). On April 24, 2023, Mr. DeLeo responded in opposition. *Resp. in Opp'n* (ECF No. 34) (*Pl.'s Opp'n*). On May 8, 2023, the Jones Defendants replied. *Reply* (ECF No. 37) (*Defs.' Reply*). The Court held oral argument on February 8, 2024, *Min. Entry* (ECF No. 42), and ordered the parties to file supplemental memoranda on two questions: (1) whether Massachusetts requires expert testimony on the issue of causation in legal malpractice cases; and (2) whether Maine does. On February 22, 2024, both Mr. DeLeo and the Jones Defendants filed supplemental memoranda. *Pl.'s Suppl. Br. in Support of Opp'n to Defs.' Mot. for Summ. J.* (ECF No. 43) (*Pl.'s Suppl.*); *Defs. Miranda S. Jones, Esq. and*

*O'Reilly, Grosso, Gross & Jones, P.C.'s Suppl. Br. on the Issue of the Requirement of Expert Test. on the Issue of Causation* (ECF No. 44) (*Defs.' Suppl.*).

## II.   THE PARTIES' POSITIONS

### A.   Defendants Miranda S. Jones and O'Reilly, Grosso, Gross & Jones, P.C.'s Motion for Summary Judgment

The Jones Defendants' argument has one main thrust: their actions did not cause Mr. DeLeo's unfavorable outcome or his injuries, and he cannot prove otherwise. *See Defs.' Mot.* at 5-13. This argument has two subparts. First, the Jones Defendants assert that Mr. DeLeo failed to put forth sufficient facts to support a finding that their actions caused his unfavorable outcome. *Id.* at 5-10. Second, they contend that the facts show no causal link between their alleged malpractice and Mr. DeLeo's claimed injuries. *Id.* at 10-13.

The Jones Defendants summarize their argument about insufficient facts as follows: "Plaintiff has failed to show that the defense as to his personal liability would have been successful, had Ms. Jones[] raised it." *Id.* at 5.

They then provide the Court with the Maine standard for attorney malpractice and indicate that in Maine plaintiffs typically prove professional negligence by presenting the merits of the underlying action, often called the case-within-a-case. *Id.* at 5-6. According to the Jones Defendants, if a negligence claim rests on the allegation that an attorney did not raise a proper defense, "the burden remains on the plaintiff to show that such defense would have been successful," *id.* at 6, and to "establish [the] elements of professional negligence." *Id.* (alteration in original) (citing *Fleming v. Gardner*, 658 A.2d 1074, 1077 (Me. 1995)).

13

The Jones Defendants subsequently turn to the personal liability of agents acting on behalf of a corporation: "[i]t is the duty of the agent, if he would avoid personal liability on a contract entered into by him on behalf of his principal, to disclose not only that he is acting in a representative capacity, but also the identity of his principal." *Id.* at 6-7 (citing *Atlantic Salmon A/S v. Curran*, 591 N.E.2d 206, 208 (Mass. App. Ct. 1992)).

They then summarize *Robert Trent Jones, Inc. v. Canter*, 474 N.E.2d 560 (Mass. App. Ct. 1985), a case wherein the Massachusetts Appellate Court imposed personal liability on a corporation's principal officer.  They aver that "[i]n rejecting the defendant's argument as to his personal liability, the court explained, '[t]he jury could properly find,[] on all the evidence, that the capacity in which [the agent] was acting was not made clear to the plaintiff and that the plaintiff was depending on [the agent]'s execution of the written contract to disclose the entity with whom we are contracting.'" *Defs.' Mot.* at 8 (second alteration in original) (citing *Robert Trent Jones*, 474 N.E.2d at 563).  The *Robert Trent Jones* court, the Jones Defendants point out, went on to say that "[if] Canter had executed the contract, identifying the contracting party . . . he could thereby have precluded personal liability." *Id.* (alteration in *Defs.' Mot*) (citing *Robert Trent Jones*, 474 N.E.2d at 563 (citing Restatement (Second) of Agency § 323(1) (1958))).  Further, according to the Jones Defendants, the Massachusetts Appellate Court held that even if the agent "received and used the plaintiff's services solely as agent . . . he is nevertheless liable as agent 'unless [he] gives such complete information concerning his principal's identity that

14

he can be readily distinguished.'" *Id.* at 8 (quoting *Robert Trent Jones*, 474 N.E.2d at 564 (quoting Restatement (Second) of Agency § 321 cmt. a (1958))).

The Jones Defendants argue that based on *Robert Trent Jones* and her understanding of the agreement between Mr. DeLeo and Mr. Vegnani, Attorney Jones "made the correct and reasonable decision not to pursue any defenses as to Mr. DeLeo's personal liability." *Defs.' Mot.* at 8.  In support, they assert that Attorney Jones "has established that the contract was signed by both Mr. Vegnani and Mr. DeLeo individually" and that Mr. DeLeo did not "provide any designation that he [wa]s signing this contract as an agent for Mass Medical Services." *Id.* at 9.  To the Jones Defendants, "[w]hen, as was made abundantly clear in *Robert Trent Jones*, there was no indication in the contract that Mr. DeLeo was signing on behalf of the company, he cannot avoid personal liability." *Id.*

Moreover, they continue, Attorney Jones' "judgment call was supported by the appellate court's later decision." *Id.*  Specifically, they contend that "[i]n affirming the judgment and orders denying the post-trial motions, the appellate court stated that Mr. DeLeo's argument as to personal liability was not only waived, as it was not properly raised below, but was 'without merit' because 'the agreement contemplated the duties and benefits to DeLeo himself (in addition to Mass Medical Services, Inc.), and thus plainly bound him individually.'" *Id.* (quoting *Vegnani v. Mass Med. Servs.*, 157 N.E.3d at *1).

"Furthermore," the Jones Defendants continue, Attorney Jones "made Mr. DeLeo aware of his potential personal liability multiple times." *Id.* (citing DSMF ¶

9).  They also aver that Attorney Jones "proposed and attempted to settle the case on multiple occasions," in "attempts to limit Mr. DeLeo's personal exposure." *Id.* (citing JSMF ¶¶ 16, 22).

In sum, the Jones Defendants argue that "Mr. DeLeo has failed to submit any evidence that had Ms. Jones pursued a defense as to his personal liability, he could have, or would have received a more favorable outcome, and in essence winning his case within a case." *Id.* at 9-10.  In turn, they believe, "based on the ruling in *Robert Trent Jones*, Defendants are entitled to summary judgment." *Id.* at 8.

The Jones Defendants' second argument is that Mr. DeLeo cannot establish proximate causation because he "does not have the requisite expert testimony." *Id.* at 11.  To support this contention, they cite language in *Holdsworth v. Bernstein, Shur, Sawyer & Nelson, P.A.,* No. BCD-CV-13-03, 2014 Me. Bus. & Consumer LEXIS 10 (Me. Bus. & Consumer Ct. June 6, 2014), *see id.*, which states that "[i]n the context of a professional negligence claim, a Plaintiff can survive summary judgment on the issue of causation only if Plaintiff can generate through expert testimony sufficient evidence that a breached duty proximately caused an injury or loss to the Plaintiff." *Holdsowrth*, 2014 Me. Bus. & Consumer LEXIS 10, at *19.  They add that Mr. DeLeo's designated expert, Mr. Kazarian, "failed to provide" that requisite testimony. *Defs.' Mot.* at 11.

The Jones Defendants then analogize the present case to *Wilson v. Lilley*, 2016 Me. Bus. & Consumer LEXIS 33 (Me. Bus. & Consumer Ct. December 21, 2016), wherein, they assert, the "court found that, although the plaintiffs had designated an

16

expert, their evidence of causation was insufficient." *Defs.' Mot.* at 12.  They quote the court's reasoning, which in part reads:

> If the plaintiff's theory of causation rests on speculation or conjecture, the defendant is entitled to judgment as a matter of law.  Attorney Petruccelli has offered no foundation or explanation for his opinion that, if the Lilley Defendants had presented live expert testimony at the panel hearing, then one of the two "law-trained" panel members would have found for Plaintiffs.
> . . .
> Without proper foundation, a jury would be unable to assess or weigh Attorney Petruccelli's opinion without resorting to speculation of its own. Therefore, Attorney Petruccelli's testimony is insufficient evidence that the Lilley Defendants' decision to not call live experts caused the unanimous panel decrees in favor of the Medical Defendants.

*Wilson*, 2016 Me. Bus. & Consumer LEXIS 33, at *11-13.  Here, as there, the Jones Defendants argue, without  "appropriate expert testimony, which Mr. DeLeo has not proffered, these issues would require a jury to engage in pure conjecture regarding the issue of causation." *Defs.' Mot.* at 13.  Therefore, they conclude, as "Mr. DeLeo cannot present the necessary expert testimony to establish causation, Defendants are entitled to summary judgment on the Complaint."  *Id.*

## B.   Plaintiff Michael James DeLeo's Opposition

Mr. DeLeo contends that the Jones Defendants' motion "must be denied because both arguments are premised on inapplicable or misunderstood law, namely (1) their misguided analysis of *Robert Trent Jones* []; and (2) their application of Maine case law to the question of whether expert testimony on causation is required where Massachusetts jurisprudence governs." *Pl.'s Opp'n* at 1.

Regarding the first argument, Mr. DeLeo argues *Robert Trent Jones* is "inapposite."  *Id.* at 10.  First, he says *Robert Trent Jones* was a case where liability

"for damages was a question of fact decided by a jury, not on summary judgment." *Id.* at 2. Mr. DeLeo argues that he is "obligated to prove his case at trial, but the case is not at the trial stage yet," *id.* at 7, and the question of personal liability "can only be resolved by submitting the case to the jury." *Id.* at 7-8.

Mr. DeLeo further argues that the Jones Defendants' argument on causation "is simply not correct . . . numerous facts that would have supported a defense on Mr. DeLeo's personal liability were known to his attorney," yet "Ms. Jones failed to raise any defense whatsoever as to Mr. DeLeo's personal liability." *Id.* at 2.

If this case proceeds to trial, to support his legal theory that he was not liable in the underlying suit, Mr. DeLeo says he "will testify that he was not Mr. Vegnani's employer and did not engage in activities that an employer would, for example, issuing an IRS Form W-2." *Id.* at 8. He will also submit that "when Mr. Vegnani made an unemployment claim following his termination, he filed that claim not with Mr. DeLeo, but with Mass Medical Services, Inc., further evidence that even Mr. Vegnani did not consider Mr. DeLeo his employer." *Id.* Given these facts, Mr. DeLeo insists that since in *Robert Trent Jones* "it was a jury who resolved the question as to whether the defendant was liable[,] . . . there must be a trial in this case." *Id.* at 10. That trial, Mr. DeLeo contends, would allow the jury to decide "the case within a case": "whether Mr. DeLeo was Mr. Vegnani's employer for purposes of paying severance." *Id.*

Second, Mr. DeLeo continues, "in *Robert Trent Jones*, there was neither a signed contract with an individual nor a corporate entity[,]" while here "there is a

18

contract between two individuals and a corporate entity." *Id.* at 2. Mr. DeLeo argues that the *Robert Trent Jones* "court found that 'the plaintiff was depending on Canter's execution of the written contract to disclose the entity with whom we are contracting.'" *Id.* at 9-10 (quoting *Robert Trent Jones*, 474 N.E.2d at 562). Dissimilarly, Mr. DeLeo maintains,

> Here, in the underlying case, Mr. Vegnani sued not only Mr. DeLeo for breach of the Employment Agreement, but also Mass Medical Services, Inc. He argued that *both* were liable under the Agreement to pay him severance when he was terminated from employment. The case went to trial against *both* Mr. DeLeo and Mass Medical Services, Inc., with Defendants failing to advance any argument that Mr. DeLeo could not be liable to pay severance. The jury found against *both*, as evidenced by the jury verdict form. On appeal, the Massachusetts Appeals Court noted that the Agreement contemplated duties and benefits to both Mr. DeLeo and Mass Medical Services, recognizing both were parties to the contract.

*Id.* at 10 (emphasis in original).

Turning to his second argument, Mr. DeLeo contends that the Jones "Defendants incorrectly claim summary judgment is proper because Mr. DeLeo has failed to submit expert testimony regarding causation." *Id.* at 11. Mr. DeLeo goes on to say the Jones Defendants "also wrongly argue that Mr. DeLeo was '*required* to proffer expert evidence linking Ms. Jones['] act and omissions . . . to his alleged injuries.'" *Id.* (quoting *Defs.' Mot.* at 12) (emphasis in *Pl.'s Opp'n*).

Mr. DeLeo contends this is so because "Massachusetts' substantive law applies in this matter," *id.* at 2; *see also id.* at 5-7, and "Massachusetts not only does not require [expert testimony] as a general rule, but also does not allow it in a professional negligence case to prove the 'case within a case.'" *Id.* at 2-3.

To bolster this argument, Mr. DeLeo cites Massachusetts caselaw. *See Pl.'s Opp'n* at 11-12 (citing *Greenspun v. Boghossian*, 126 N.E.3d 99, 104 (Mass. App. Ct. 2019); and *Fishman v. Brooks*, 487 N.E.2d 1377, 1380 (Mass. 1986)).  He asserts that "[a]t the heart" of these courts' reasoning "is the principle that proximate causation is the 'case within a case' underlying a professional negligence case, and an expert witness cannot provide conclusive evidence of a question reserved for the fact finder." *Pl.'s Opp'n* at 12 (citing *Fishman*, 487 N.E.2d at 1380).  "Therefore," Mr. DeLeo claims that the Jones Defendants' second argument "that Plaintiff has failed to proffer expert testimony on the issue of causation is irrelevant and incorrect and does not support entry of summary judgment in Defendants' favor." *Id.*

Mr. DeLeo concludes by stating that there "are factual issues with respect to whether, if the defense had been raised, a jury would have concluded Mr. DeLeo had no obligation to pay and the obligation was exclusively one imposed on the employer, Mass Medical." *Id.*  Therefore, "[a]s a matter of law," Mr. DeLeo insists, "this Court cannot conclude that Defendants' action did not cause harm (i.e., the adverse jury verdict) to Mr. DeLeo.  As a result, summary judgment should be denied." *Id.*

## C.  Defendants Miranda S. Jones and O'Reilly, Grosso, Gross & Jones, P.C.'s Reply

In reply, the Jones Defendants make clear that it is their position "that as a matter of law, based on the case law in Massachusetts at the time legal services were provided in the underlying matter, Plaintiff cannot establish causation in this matter." *Defs.' Reply* at 1.  They then characterize Mr. DeLeo's response as "attempts to create factual disputes, immaterial to this Court's ultimate task of determining

whether *Robert Trent Jones* eliminated any defenses to personal liability that Plaintiff would have had to Mr. Vegnani's claims against him personally." *Id.* at 1-2. The Jones Defendants believe these attempts do "not warrant the denial of summary judgment." *Id.* at 2.

The Jones Defendants quote Massachusetts caselaw for the proposition that although the elements of legal malpractice are generally factual ones for the jury, "they may be resolved as a matter of law at the summary judgment stage." *Id.* (quoting *Barron v. DiPiano*, 102 N.E.3d 428 (Table), at *1 (Mass. App. Ct. 2018); and citing *Global NAPs, Inc. v. Awiszus*, 930 N.E.2d 1262 (Mass. 2010)).

With this legal foundation, the Jones Defendants press their argument that Mr. DeLeo "cannot show that he has a 'reasonable expectation' of proving the essential element of proximate cause." *Id.* To the Jones Defendants, the facts introduced by Mr. DeLeo, namely "facts regarding the issuance of tax forms and claims for unemployment benefits, are not material to this Court's decision on the matter of proximate cause." *Id.*

Instead, they argue, "the most critical and arguably only facts this Court need consider are those related to the Employment Agreement. Plaintiff's and Mr. Vegnani's later dealings and operation of the business have no impact on whether Plaintiff bound himself personally when he signed the Employment Agreement." *Id.* Continuing their plea, the Jones Defendants argue that the "root issue for this Court to decide is whether *Robert Trent Jones* effectively eliminated any potential defense to personal liability for Plaintiff in the underlying matter," *id.* at 2-3, which they

believe "is a question of law that this Court can, and should, decide on summary judgment." *Id.* at 3.

Turning to *Robert Trent Jones*, the Jones Defendants argue that save for "the fact that no formal contract was signed between the parties in *Robert Trent Jones*, the court's reasoning on appeal holds true and applicable." *Id.* This is so, they contend, because the court there "affirmed that personal liability could be found" when an agent fails to identify that they are acting as such for a principal. *Id.* (citing *Robert Trent Jones*, 474 N.E.2d at 563-64). The Jones Defendants then reiterate their point that Mr. DeLeo nowhere indicated in the Employment Agreement that he was signing the contract as an agent instead of as an individual. Therefore, they continue, Attorney Jones "correctly determined that any defense to Plaintiff's personal liability would have been unsuccessful." *Id.* at 3-4. They also reiterate their position that the Massachusetts Appellate Court's holding on appeal "supported" Attorney Jones' "judgment call." *Id.* at 4.

Next, the Jones Defendants argue that the law regarding expert testimony is not divergent between Maine and Massachusetts. *Id.* (citing *Greenspun*, 126 N.E.3d at 104; and *Holdsworth*, 2014 Me. Bus. & Consumer LEXIS 10, at *19. They then discuss *Abdulky v. Lubin & Meyer, P.C.*, 205 N.E.3d 381 (Mass. App. Ct. 2023), and argue that the "Appellate Court in *Abdulky* adopted in effect the same test as is required under Maine law." *Defs.' Reply* at 5. "Under both jurisdictions," in the Jones Defendants' view, "the Plaintiff's failure to provide testimony as to causation and damages requires that the Motion for Summary Judgment be granted." *Id.* Despite

22

these similarities, however, the Jones Defendants maintain their "position that Maine law should apply, as applied in the initial motion for summary judgment." *Id.* at 5 fn. 1. Regardless, they say, "the issue of expert testimony" is "an additional ground for summary judgment" that is "cumulative with the fact . . . Mr. DeLeo was liable for the Vegnani judgment." *Id.* at 6.

### D. Michael James DeLeo's Supplemental Memorandum

On February 22, 2024, Mr. DeLeo filed a supplemental memorandum, addressing two issues that became the focus of oral argument: 1) whether Massachusetts requires expert testimony on the issue of causation in a legal malpractice claim, and 2) whether Maine does so. Mr. DeLeo contends that while Maine "appears to require" expert testimony on causation in most legal malpractice cases, Massachusetts does not. *Pl.'s Suppl.* at 1-2.

Mr. DeLeo goes further and contends that "[i]n Massachusetts, expert testimony is generally prohibited on the element of proximate cause." *Id.* at 2. Again citing *Greenspun*, Mr. DeLeo says that the Massachusetts rule is that "expert testimony on how a jurist would have decided an issue is improper and inadmissible. . ." and expert testimony on the issue of causation "is only occasionally appropriate . . . despite usually being required to prove duty and breach." *Id.* at 2 (quoting *Greenspun*, 126 N.E.3d at 104). Mr. DeLeo discusses several Massachusetts cases where courts have reiterated that "'no expert testimony from an attorney is required to establish the cause and the extent of the plaintiff's damages," because those issues are submitted to a jury." *Id.* (quoting *Fishman*, 487 N.E.2d at 1380; and citing *Healy*

23

*v. Hammond*, 158 N.E.3d 886 (Mass. App. Ct. 2020)).  At the same time, Mr. DeLeo acknowledges that "[s]ome outlier cases in Massachusetts have required expert testimony on causation where the underlying issue was particularly complicated." *Id.* n.1 (citing cases).  Mr. DeLeo disputes that *Abdulky*, a case relied upon by the Jones Defendants, addresses the issue now before the Court.  *Id.* at 3.

Turning to Maine law, Mr. DeLeo concedes that Maine does require expert testimony on causation, but he contends that in cases "where the negligence and harmful results are sufficiently obvious as to lie within common knowledge. . . a verdict may be supported without expert testimony."  *Id.* at 4 (quoting *Leavitt v. Waltman & Co.*, No. CIV.A.CV-03-033, 2003 Me. Super. LEXIS 261, at *5 (Me. Super. Dec. 12, 2003)).  Mr. DeLeo says that this same rule is commonly applied nationally, a typical example being when a lawyer lets a statute of limitations expire.  *Id.* at 5.

## E.   The Jones Defendants' Supplemental Memorandum

In their supplemental memorandum, the Jones Defendants maintain that "the general rule, followed in virtually all jurisdictions, is that a Plaintiff seeking to avoid summary judgment in a legal malpractice action must provide expert testimony to establish causation—that is, evidence that the Plaintiff would have achieved a more favorable result in their legal matter had negligence not occurred."  *Defs.' Suppl.* at 1.  To prove their point, the Jones Defendants attached a list of eight Maine cases, decided after *Corey* that affirm the need for expert testimony on causation.  *Id.* at 1-2 (citing *id.*, Attach. 1).  The Jones Defendants reiterate that the expert testimony requirement is the rule in "virtually every other jurisdiction."  *Id.* at 2.

Turning to Massachusetts law, the Jones Defendants dispute Mr. DeLeo's claim that "Massachusetts law is contrary to the general rule," writing that Mr. DeLeo "does not cite any direct authority for that proposition." *Id.* The Jones Defendants argue that Mr. DeLeo's reliance on *Greenspun* is "misplaced." *Id.* The Jones Defendants contend that *Greenspun* only says that "expert testimony is not required if the issue of causation is purely a question of law." *Id.* The Jones Defendants then discuss *Abdulky* and insist that it is "consistent with the general rule requiring admissible expert testimony." *Id.* at 3. Finally, the Jones Defendants argue that this case is "not a case that is so obvious as to not require expert testimony." *Id.* at 3-4.

## III.   LEGAL STANDARD

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Genuine issues of fact are those that a factfinder could resolve in favor of the nonmovant, while material facts are those whose 'existence or nonexistence has the potential to change the outcome of the suit.'" *Green Mountain Realty Corp. v. Leonard*, 750 F.3d 30, 38 (1st Cir. 2014) (quoting *Tropigas de P.R., Inc. v. Certain Underwriters at Lloyd's of London*, 637 F.3d 53, 56 (1st Cir. 2011)).

When the movant "has made a preliminary showing that there is no genuine issue of material fact, the nonmovant must 'produce specific facts, in suitable evidentiary form, to . . . establish the presence of a trialworthy issue.'" *McCarthy v. City of Newburyport*, 252 F. App'x 328, 332 (1st Cir. 2007) (alteration in original)

25

(quoting *Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir. 1999)). The nonmoving party must provide "'enough competent evidence' to enable a factfinder to decide in its favor on the disputed claims." *Carroll v. Xerox Corp.*, 294 F.3d 231, 237 (1st Cir. 2002) (quoting *Goldman v. First Nat'l Bank of Bos.*, 985 F.2d 1113, 1116 (1st Cir. 1993)). Then, a "court views the facts and draws all reasonable inferences in favor of the nonmoving party," *Ophthalmic Surgeons, Ltd. v. Paychex, Inc.*, 632 F.3d 31, 35 (1st Cir. 2011), but disregards "[c]onclusory allegations, improbable inferences, acrimonious invective, or rank speculation." *Mancini v. City of Providence ex rel. Lombardi*, 909 F.3d 32, 38 (1st Cir. 2018) (quoting *Ahern v. Shinseki*, 629 F.3d 49, 54 (1st Cir. 2010)). "[T]he plain language of Rule 56(c) mandates entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## IV.  DISCUSSION

In this case, Mr. DeLeo alleges that Ms. Jones and O'Reilly, Grosso, Gross & Jones, P.C. were negligent in representing him in an underlying suit against him and Mass Medical Services, a corporation he served as president, for breach of contract, violations of the Massachusetts Wage Act, and unfair and deceptive conduct. The alleged malpractice claim centers on one choice made by Attorney Jones at trial based on her understanding of Massachusetts law at the time: not to raise any argument that Mr. DeLeo was not individually liable to Mr. Vegnani, the former employee who

brought the suit.  Attorney Jones and her law firm, collectively the Jones Defendants, defend the choice as correct and reasonable, especially given the affirmance and reasoning at the Massachusetts Appellate Court.  *Defs.' Mot.* at 8.   Mr. DeLeo disagrees; he believes Attorney Jones failed to raise a viable defense, thereby breaching the applicable standard of care.  *Pl.'s Opp'n* at 8.  At this posture, the Jones Defendants allege summary judgment is proper, and therefore they bear the burden of proving "there is no genuine dispute as to any material fact and the[y are] entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).

However, before reaching the issue of whether there is a genuine dispute of material fact as to the legal malpractice claim, the Court discusses what legal malpractice standard is relevant: Massachusetts or Maine.  The Jones Defendants' representation of Mr. DeLeo occurred in the Commonwealth of Massachusetts.  As did the appeal.   Thereafter, proceedings were initiated in the United States Bankruptcy Court for the District of Maine, before the legal malpractice issue was referred to this Court as an ancillary proceeding.  All this is to say that the outcome of Attorney Jones' representation of Mr. DeLeo in Massachusetts state court has now led to proceedings in Maine federal court.  This, taken together with the fact that the parties disagree about whether the legal malpractice standards in Maine and Massachusetts are in conflict, requires the Court to address the choice of law issue.

A.    **Choice of Law**

1.    **Standard**

This Court has original federal question jurisdiction over this matter, as it does over all civil proceedings arising under Title 11 of the United States Code, save limited exceptions not applicable here.  28 U.S.C. § 1334(a), (b), (e).  Through supplemental jurisdiction, the Court also has pendent jurisdiction over the state-level legal malpractice claim because it arises from the same set of facts—Mr. DeLeo's liability to Mr. Vegnani—as the Title 11 bankruptcy proceeding.

"When a federal court exercises pendent jurisdiction over state law claims, as here, it must apply the substantive law of the state in which it sits.  This includes the forum state's choice of law rules." *Bi-Rite Enterprises, Inc. v. Bruce Miner Co.*, 757 F.2d 440, 442 (1st Cir. 1985) (internal quotations omitted); *see also Ashmore v. Ne. Petroleum Div. of Cargill, Inc.*, 843 F. Supp. 759, 772 (D. Me. 1994) ("Supplemental state-law claims in a case where jurisdiction is based on federal question are also decided with reference to the choice-of-law provisions of the state in which the federal court sits").  The District of Maine sits in the state of Maine, making Maine the forum state.

Maine has adopted the Restatement (Second) Conflict of Laws' most significant contacts and relationships approach, *Zelman v. Zelman*, 2020 ME 138, ¶ 16, 242 A.3d 1111, 1115 n.6, in both tort actions and contract disputes.  *Flaherty v. Allstate Ins. Co.*, 2003 ME 72, ¶ 16, 822 A.2d 1159.  As this is a legal malpractice claim following

a theory of negligence, it is a tort action, and the contacts and relationships approach applies.

Under the choice-of-law approach adopted by the Supreme Judicial Court of Maine, "[t]he rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6." Restatement (Second) of Conflict of Laws § 145 (Am. Law Inst. 1971). The principles in § 6 of the Restatement indicate that:

> (1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.
> (2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include
> > (a) the needs of the interstate and international systems,
> > (b) the relevant policies of the forum,
> > (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
> > (d) the protection of justified expectations,
> > (e) the basic policies underlying the particular field of law,
> > (f) certainty, predictability and uniformity of result, and
> > (g) ease in the determination and application of the law to be applied.

*Id.* § 6.

"[I]n applying the principles of § 6 to the determine the law applicable to an issue," a court must take into account the following contacts: "a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." *Id.* § 145. The Restatement then advises that "[t]hese contacts are to be

evaluated according to their relative importance with respect to the particular issue." *Id.*

### 2. Discussion

Mr. DeLeo argues that applying the most significant contacts and relationship test "overwhelmingly favor[s] applying Massachusetts law." *Pl.'s Opp'n* at 7. To bolster this assertion, he contends that "the second, third, and fourth [] factors favor Massachusetts law" since the alleged "professional negligence causing Mr. DeLeo's injuries occurred in Massachusetts" and the Jones Defendants "are domiciled in Massachusetts and their representation of Mr. DeLeo occurred in Massachusetts." *Id.* "Additionally," Mr. DeLeo avers, "Massachusetts has a strong public policy interest in overseeing and regulating the conduct of an attorney barred and practicing in its state." *Id.* Inversely, Mr. DeLeo says that "[t]he only factor that even arguably weighs in favor of Maine is the fact that Plaintiff was a resident of Maine when he filed for bankruptcy and then initiated this lawsuit as an adversary proceeding under the umbrella of that Chapter 11 proceeding." *Id.*

The Jones Defendants maintain that there is no direct conflict of laws, therefore Maine law should apply. *Defs.' Reply* at 5 n.1. To support this contention, they say:

> Massachusetts law has clearly stated "[a]s part of the 'trial within a trial' in a legal malpractice case, a plaintiff may need expert witnesses." [And t]his is not unlike Maine law, which states: "[i]n the context of a professional negligence claim, a Plaintiff can survive summary judgment on the issue of causation only if Plaintiff can generate through expert testimony sufficient evidence that a breached duty proximately caused an injury or loss to the Plaintiff.

*Id.* at 4-5 (citing *Greenspun*, 126 N.E.3d at 104; and *Holdsworth*, 2014 Me. Bus. & Consumer LEXIS 10, at *19).

### i.    Whether a conflict exists

"The first step in a choice of law analysis is to determine whether an actual conflict exists between the substantive laws of the interested jurisdictions . . .." *Reicher v. Berkshire Life Ins. Co. of America*, 360 F.3d 1, 4 (1st Cir. 2004).  The Court is unconvinced there is a conflict between Massachusetts and Maine law on the need for expert testimony in a legal malpractice claim.

To prove a legal malpractice civil action in Maine, a plaintiff must prove two elements: (1) that the attorney breached a duty "to use such skill, prudence, and diligence as lawyers of ordinary skill and capacity commonly possess and exercise," *Sohn v. Bernstein*, 279 A.2d 529, 532 (Me. 1971), and (2) that this breach "actually and proximately caused his or her injury."  *Wheeler v. White*, 1998 ME 137, ¶ 8, 714 A.2d 125, 127.  *See* JACK H. SIMMONS, DONALD N. ZILLMAN & ROBERT H. FURBISH, MAINE TORT LAW, § 9.25 (2018 ed.).  Similarly, in Massachusetts "[t]o prevail on a claim of negligence by an attorney, a client must demonstrate that the attorney failed to exercise reasonable case and skill in handling the matter for which the attorney was retained. . .; that the client has incurred a loss; and that the attorney's negligence is the proximate cause of the loss." *Greenspun*, 126 N.E.3d at 103-04 (quoting *Global NAPs,* 930 N.E.2d at 1271).

31

It is true that in Maine, the general rule is that to prevail in a legal malpractice claim, a plaintiff must present expert testimony on the issue of causation.[15] *Holdsworth*, 2014 Me. Bus. & Consumer LEXIS 10, at *19 ("In the context of a professional negligence claim, a Plaintiff can survive summary judgment on the issue of causation only if Plaintiff can generate through expert testimony sufficient evidence that a breached duty proximately caused an injury or loss to the Plaintiff"); *Corey v. Norman, Hanson & DeTroy*, 1999 ME 196, ¶ 13, 742 A.2d 933 ("In order to avoid summary judgment on NH&D's challenge to the sufficiency of Corey's evidence regarding proximate causation, Susan must show through expert testimony that the divorce judgment would have been more favorable to Susan if the value of the dental

---

[15]     Maine law recognizes two related, yet distinct burdens of proving causation in a legal malpractice case depending on whether the plaintiff alleges ordinary legal malpractice or a "failure to plead." *See Chretien v. Berman & Simmons*, No. PORSC-CV-17-265, 2018 WL 7246921 (Me. Super. Dec. 10, 2018); *Reppuci v. Nadeau*, 2020 ME 114, ¶¶ 9-15, 238 A.3d 994, 997-98.

Under the ordinary standard, "a plaintiff must show (1) a breach by the defendant of the duty owed to the plaintiff to conform to a certain standard of conduct; and (2) that the breach of that duty proximately caused an injury or loss to the plaintiff." *Chretien*, 2018 WL 7246921, at *6 (quoting *Brooks v. Lemieux*, 2017 ME 55, ¶ 9, 157 A.3d 798)). In a failure to plead, or "modified" legal malpractice case, "the proximate cause standard remains the same . . .. What changes is the baseline from which 'a more favorable result' is measured." *Repucci*, 2020 ME 114, ¶ 13.

Under the failure to plead standard, a plaintiff must "demonstrate that there are  facts in dispute which are sufficient to allow a jury to conclude that: (1) the defendant attorney was negligent in representation of the plaintiff; and (2) the attorney's negligence caused the plaintiff to lose an opportunity to achieve a result, favorable to the plaintiff, which (i) the law allows; and (ii) the facts generated by plaintiff's M.R. Civ. P. 7(d) would support, if the facts were believed by the jury. *Chretien*, 2018 WL 7246921. at *7 (quoting *Niehoff v. Shankman & Assocs. Legal Ctr., P.A.*, 200 ME 214, ¶ 10, 763 A.2d 121); *see also Repucci*, 2020 ME 114, ¶ 13 ("Whereas a poorly presented case decided by a fact-finder yields a certain result, which then forms the starting point for the proximate cause analysis, a "failure to plead" case yields no result at all because the claim was never put before the fact-finder for decision in the first instance. In the latter circumstance, in order to satisfy the proximate cause standard, the plaintiff must prove that, but for the attorney's negligence, he or she would have achieved any favorable result, because any positive result is "more favorable" than the absence of a result").

The parties did not raise this issue and the Court need not reach it because "the distinction is not relevant to the Defendants' argument on causation.  The ordinary *Brooks* standard and the modified *Niehoff* standard both require a plaintiff to prove—and at the summary judgment stage to make out a prima facie showing—that the defendant attorney's negligence caused a loss or a lost opportunity to the plaintiff." *Id.*

practice had been shown to be higher than the $37,700 agreed on by NH&D, *i.e.*, that NH&D's negligence resulted in the divorce judgment being less favorable to her").

But in *Holdsworth*, the trial court concluded that the plaintiff had generated an issue of fact on causation through expert testimony, *Holdsworth*, 2014 Me. Bus. & Consumer LEXIS 10, at *20, so whether expert testimony would be necessary in other cases is dicta.  In *Corey*, the Maine Supreme Judicial Court addressed whether the trial court would have accepted a higher value for a dental practice; if so, whether it would have awarded any part of that increase to the plaintiff; and if so, whether the increase value would have reduced the plaintiff's award of alimony.  1999 ME 196, ¶ 14.  Not surprisingly, the Maine Supreme Judicial Court concluded that the complicated factual issues in *Corey* required expert testimony.

Assuming the general rule in Maine makes expert testimony mandatory in legal malpractice cases, Maine has nevertheless long recognized a narrow exception in the context of other professional malpractice claims "where the negligence and harmful results are sufficiently obvious as to lie within common knowledge. . .." *Forbes v. Osteopathic Hosp. of Me., Inc.*, 552 A.2d 16, 17 (Me. 1988) (quoting *Cox v. Dela Cruz*, 406 A.2d 620, 622 (Me. 1979) (quoting *Cyr v. Giesen*, 108 A.2d 316 (Me. 1954))).  The Maine Supreme Judicial Court extended this principle to a pharmacist, *Walter v. Wal-Mart Stores, Inc.*, 2000 ME 63, 748 A.2d 961, and there is no reason it would not apply this exception to legal malpractice claims in the rare case where the nature of the malpractice and the link to the harm are also sufficiently obvious to be common knowledge.

Under Massachusetts law, to prove proximate cause in a legal malpractice claim, "a client must demonstrate that it 'probably would have obtained a better result had the attorney exercised adequate skill and care.'" *Kiribati*, 83 N.E.3d at 805 (citing *Global NAPs, Inc.*, 930 N.E.2d at 1272). "Generally, the question of what the probable outcome would have been had the attorney acted reasonably is determined by a 'trial within a trial,' in which a new trier of fact decides both whether the attorney was negligent and what the outcome of the litigation would have been in the absence of negligence." *Id.* (citing *Fishman*, 487 N.E.2d at 1380). "The new trier of fact does not attempt subjectively to determine what the earlier trier of fact would have done; neither the judge nor the jurors at the earlier trial may testify at the new trial as to what they would have done under different circumstances." *Id.* (citing *Fishman*, 487 N.E.2d at 1380). "Rather, the new trier of fact makes an independent determination as to what reasonably would have been the outcome of the earlier trial in the absence of negligence, based on the applicable law and the evidence presented at the new trial." *Id.*

"Expert testimony is generally necessary to establish that an attorney failed to meet the standard of care owed in the particular circumstances." *Kiribati*, 83 N.E.3d at 805 (citing *Global NAPs, Inc.*, 930 N.E.2d at 1271-72). That said, no expert testimony is required where the issue of causation rests on a question of law. *Greenspun*, 126 N.E.3d at 104. In fact, "in a legal malpractice action, expert testimony on issues of law should be precluded because an opinion of law is generally not a proper subject for expert testimony." *Id.* at 104 (cleaned up). "If causation

34

depends on a legal ruling in the underlying action, then the issue usually presents a question of law.  Expert testimony on how a jurist would have decided an issue is improper and inadmissible." *Id.* (cleaned up).

Similarly, Massachusetts courts also recognize that "such testimony is not essential where the claimed malpractice is so gross or obvious that laymen can rely on their common knowledge to recognize or infer negligence, or where an attorney disobeys the lawful instructions of his client and a loss ensues for which the attorney is responsible." *Id.* (citing *Global NAPs, Inc.*, 930 N.E.2d at 1272; *Pongonis v. Saab*, 486 N.E.2d 28, 28 (Mass. 1985)).

### ii.    Application

In situations like this, where an attorney fails to bring a claim because they have misread the applicable law, Massachusetts would not require expert testimony on causation, and may even prohibit it.  Although there is no authority in Maine to say that expert testimony on causation would be forbidden, the same general principle, namely that if causation is a matter of common sense, expert testimony may not be essential, may be true in Maine but only if the attorney's failure is sufficiently obvious to be deemed a matter of common knowledge.  If there is no conflict of law between Massachusetts and Maine, there is no choice of law issue. Nevertheless, if there is a conflict between Massachusetts and Maine law on this narrow point, the Court determines that it must apply Massachusetts, not Maine, law and therefore, the result is the same.

The majority of the factors in § 145 of the Restatement supports applying Massachusetts law. The first factor supports applying Massachusetts law because the alleged injury in the legal malpractice claim is that Mr. DeLeo received an adverse jury verdict in a Massachusetts court. The second factor likewise supports applying Massachusetts law, since the conduct alleged to have caused Mr. DeLeo's injury—the alleged professional negligence—occurred in Massachusetts. The third factor is double-edged as the Jones Defendants are domiciled in Massachusetts while Mr. DeLeo is now domiciled in Maine. The fourth factor supports applying Massachusetts law as the Jones Defendants' representation of Mr. DeLeo—the relationship between the parties—was centered in Massachusetts.

With these contacts in mind, the Court considers the principles outlined in § 6 of the Restatement, which once again point toward applying Massachusetts law. Mr. DeLeo correctly points out that "Massachusetts has a strong public policy interest in overseeing and regulating the conduct of an attorney barred and practicing in its state." *Id.*; *see Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 460 (1978) ("the State bears a special responsibility for maintaining standards among members of the licensed professions"). Maine, on the other hand, has a limited interest in how attorneys barred in and practicing in Massachusetts comport themselves in Massachusetts as Maine plays no role in licensing or regulating them. This logic extends to the relative interests of the states in whether expert testimony should be required or merely accepted in considering a legal malpractice case about representation within their respective jurisdictions. Similarly, the need for certainty,

predictability, and uniformity in the results of legal malpractice claims arising out of Massachusetts would be undermined if a different evidentiary standard applied depending on the state where the malpractice claim was brought. This, of course, counsels toward applying the Massachusetts standard. The ease of application is not a relevant consideration here as both standards are relatively straightforward in a legal system that is often Byzantine.

Taken together, the § 6 factors and the § 145 principles strongly suggest that the Court should apply Massachusetts law.

Therefore, if there is a conflict of laws then Massachusetts law would be applied, and if there is no conflict it is of no consequence which law is applied as neither would require expert testimony in this case as it falls within the common knowledge of a layperson. "It is a well-established—and prudential—principal that when the result in a case will not be affected by the choice of law, an inquiring court, in its discretion, may simply bypass the choice." *Lexington Ins. Co. v. General Acc. Ins. Co. of America*, 338 F.3d 42 (1st Cir. 2003); *accord Russomano v. Novo Nordisk Inc.*, 960 F.3d 48, 53 (1st Cir. 2020). Under these circumstances, as "there do not appear to be significant differences in the laws of the relevant states, we bypass this issue." *OneBeacon Ins. Co. v. Georgia-Pacific Corp.*, 474 F.3d 6, 9 (1st Cir. 2007) (citing *Lexington Ins. Co.*, 338 F.3d at 46).

### B.     Sufficient Evidence to Demonstrate Legal Malpractice

The Jones Defendants further contend that "[e]ven without the use of expert testimony," Mr. DeLeo "cannot show that he has a 'reasonable expectation' of proving the essential element of proximate cause." *Defs.' Reply* at 2.

Mr. DeLeo retorts that the Jones Defendants' "position betrays a fundamental misunderstanding of both Massachusetts law as it pertains to legal malpractice cases and the question of whose role it is to decide whether Plaintiff has proved causation." *Pl.'s Opp'n.* at 7.  He maintains that the question of whether the personal liability defense would have been successful "can only be resolved by submitting the case to the jury," since it "generates factual issues concerning causation." *Id.* at 8. Mr. DeLeo goes on to say that "the jury must decide if Mr. DeLeo's defense—that he was not obligated to pay severance to Mr. Vegnani—carries the day," *id.*, so it is not a "question[] that can be resolved as a matter of law." *Id.* at 10.

The Jones Defendants reply by citing language from the Supreme Judicial Court of Massachusetts that states that "[t]he issue whether an attorney's negligence was a proximate cause of a client's loss may be resolved at the summary judgment stage." *Global NAPs,* 930 N.E.2d at 1272.  The Jones Defendants contend that the "root issue for this Court to decide is whether *Robert Trent Jones* effectively eliminated any potential defense to personal liability for Plaintiff in the underlying matter." *Defs.' Reply* at 2-3.  They maintain that "[t]his is a question of law that this Court can, and should, decide on summary judgment." *Id.* at 3.

38

Both parties are partially correct. Whether the defense against personal liability would have succeeded at trial is a factual issue to be determined by a jury during a trial within a trial. However, the question of whether the defense against personal liability would have been viable at the time of the underlying trial, given the *Robert Trent Jones* precedent, is a legal issue that the Court may determine as a matter of law. In other words, while the Jones Defendants characterize the decision not to pursue a personal liability defense as a "judgment call," that judgment call depended on a legal conclusion, namely whether *Robert Trent Jones* foreclosed any argument about personal liability. The Court, then, turns to this determination.

### 1. Robert Trent Jones did not foreclose a personal liability argument

The Jones Defendants say that "[g]iven the landscape of Massachusetts law at the time the advice was provided, Ms. Jones did not believe the defense would be viable and chose to focus her arguments on the validity and breach of the contract itself." *Defs.' Mot.* at 5. The specific legal landscape they refer to is the Massachusetts Appellate Court's decision in *Robert Trent Jones. See id.* at 7-10; *Defs.' Reply* at 1-4.

After scrutinizing *Robert Trent Jones* and other relevant Massachusetts agent liability caselaw, the Court concludes that notwithstanding *Robert Trent Jones*, a personal liability defense could have been viable as a matter of law since *Robert Trent Jones* does not stand for the proposition the Jones Defendants contend it does and because the facts in the underlying case here are readily distinguishable.

The Jones Defendants correctly point out that *Robert Trent Jones* made clear that had Alan S. Canter, the agent, identified the contracting party as Elco Resort

39

Developers, Inc., the principal, "he could thereby have precluded personal liability." 474 N.E.2d at 563. However, it is not a corollary to that principle, as the Jones Defendants contend, that if someone has not identified the principal as the contracting party, they are necessarily liable. In other words, *Robert Trent Jones* does not on its face stand for the proposition that an agent must be held personally liable if they fail to identify the principal. The Jones Defendants concede as much in their own framing of *Robert Trent Jones*. *See Defs.' Reply* at 3 ("Where the agent, Mr. Canter failed to identify that he was acting as an agent for a principal, Elco Resort Developers, Inc. . . . the court affirmed that personal liability *could* be found" (emphasis supplied)).

The Restatement (Third) of Agency is instructive. Under the Restatement, when a third party, in this case Mr. Vegnani, "knows the identity of the principal, the third party ordinarily expects that the principal, and not the agent, will become a party to the transaction." Restatement (Third) of Agency § 6.01 cmt. b (2006). As this comment makes clear, it is possible that a contracting party could know a principal's identity even if an agent does not identify the principal in the confines of the agreement. In such a circumstance, an agent may be able to avoid liability. That is all to say that personal liability defenses are not a dead letter simply because an agent did not affirmatively identify their principal in the signing of a contract. That being the case, the Jones Defendants' argument—that Ms. Jones' ability to raise the personal liability defense was foreclosed by *Robert Trent Jones*—falters as a matter of law.

Further, the underlying facts in *Robert Trent Jones* and the underlying case are not "clearly analogous," *Defs.' Reply* at 4, as Ms. Jones thought and the Jones Defendants claim. *See id.* The issue of whether there was a principal, and whether that principal was identified, also distinguishes the underlying case from *Robert Trent Jones*.

In the underlying case, the employment agreement does not explicitly name Mass Medical Services as a party, but it outlines Mr. Vegnani's responsibilities and compensation at Mass Medical Services, a corporation he had been a full-time employee of for years. In addition, the employment agreement, signed by both Mr. Vegnani and Mr. DeLeo, indicates that Mr. Vegnani was to be hired as CEO of Mass Medical Services.

In *Robert Trent Jones*, on the other hand, the contract at issue left blank the name of the party with whom the plaintiff would be contracting. To add to the confusion, the principal told the third party that a consultant was "his man" for negotiating terms, yet the consultant, purportedly acting as agent, stated the principal officer was the owner and principal of the project. Moreover, the principal officer managed his business affairs through more than one corporation, making it more difficult to pin down who was actually a party to the contract. Given all these factors, even assuming the agent used the services solely as an agent of the principal, the court found he was "nevertheless liable as agent 'unless he gives complete information concerning his principal's identity [so] that he can be readily

distinguished.'" *Robert Trent Jones*, 474 N.E.2d at 563-64 (quoting Restatement (Second) of Agency § 321 cmt. a (1958)).

The issue with relying on this language in *Robert Trent Jones* is that both it and § 321 of the Restatement contemplate the duties of an agent when there is a partially disclosed principal, a circumstance not applicable in the underlying suit here.  A partially disclosed principal exists "when, at the time of making the contract in question, the other party thereto has notice that the agent is acting for a principal but has no notice of the principal's identity."  Restatement (Second) of Agency § 321 cmt. *a* (1958).  As noted above, that was the case in *Robert Trent Jones*.  In the underlying case here, if Mr. DeLeo is acting as an agent, as he claims to have been, he would be the agent of Mass Medical Services.  Based on the language of the contract and the course of dealing of the parties, the notion that Mr. Vegnani was unaware that the agreement was between him and Mass Medical and not a personal agreement between him and Mr. DeLeo seems farfetched.  Put differently, for the Jones Defendants not to present this issue to a jury raises a factual issue in this Court as to whether that decision amounted to malpractice.  This is particularly so since Mass Medical, his employer, was listed on the employment agreement, and there was no suggestion that Mr. DeLeo was personally going to employ Mr. Vegnani.  Crucially, Mr. DeLeo cites competent evidence in the record to support the conclusion that Mr. Vegnani was aware of this distinction and that the Jones Defendants also should have been.  *See* PSAMF ¶¶ 8-11.

### 2.  Mr. DeLeo has Pleaded Sufficient Facts to Plausibly Support a Claim of Attorney Malpractice

Given this evidence, Mr. DeLeo, contrary to the Jones Defendants' arguments, does have a "reasonable expectation of proving the essential element of proximate cause." *Defs.' Reply* at 2.  In Massachusetts, proving proximate cause requires that Mr. DeLeo "demonstrate that [he] 'probably would have obtained a better result had the attorney exercised adequate skill and care.'" *Kiribati*, 83 N.E.3d at 805 (quoting *Global NAPS, Inc.*, 930 N.E.2d at 1272).  In Maine, the standard is a bit more stringent and requires Mr. DeLeo prove he "would have achieved a more favorable result but for" the Defendants actions.  *Repucci v. Nadeau*, 238 A.3d 994, 997, 2020 ME 114 ¶ 7 (quoting *Niehoff v. Shankman & Assocs. Legal Ctr., P.A.*, 200 ME 214, ¶ 10, 763 A.2d 121, 125).  Under either standard, Mr. DeLeo has pleaded "'enough competent evidence' to enable a factfinder to decide in its favor on the disputed claims." *Carroll*, 294 F.3d at 237 (1st Cir. 2002) (quoting *Goldman*, 985 F.2d at 1116).

Other than Ms. Jones' professional judgment, the Jones Defendants also point to the language of the Massachusetts Appellate Court to defend the decision not to assert the personal liability defense.  However, a few reasons undermine the relevance of the language the Jones Defendants cite.

First, the Massachusetts Appellate Court does not say the rest of Mr. DeLeo's arguments are without merit, instead they merely say "they *appear* to be without merit" after indicating that they were waived because they were not properly raised below.  *See Vegnani v. Mass Med. Servs.*, 157 N.E.3d 101 at *1 (emphasis supplied).  This choice of phrasing suggests that the Massachusetts court did not make any

binding pronouncement about the merit of the arguments. Quite the contrary. The phrasing indicates that the panel did not even give the argument full consideration.

Moreover, the decision of the Massachusetts Appellate Court is an unpublished disposition. *See id.* The appeals court's own notice indicates that summary decisions "are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions . . . may be cited for [their] persuasive value but, because of the limitations noted above, not as binding precedent." *See id.* (citing *Chace v. Curran*, 881 N.E.2d 792, 794 n.4 (Mass. App. Ct. 2008)). As the language in the appellate decision is not binding and has limited persuasive value since it does not address the facts nor offer any decisional rationale, the Court finds this quoted language offers minimal, if any, persuasive support to the Jones Defendants' position.

Since a personal liability defense could have been viable as a matter of law despite the holding in *Robert Trent Jones*, the Jones Defendants have not demonstrated that it is impossible as a matter of law for Mr. DeLeo to prove that raising the defense could have led to a more favorable outcome. Therefore, they are not entitled to summary judgment.

Given that there is a conceivable argument that could have led to a more favorable outcome, the issuance of tax forms and claims for unemployment benefits, which the Jones Defendants argue are "not material to this Court's decision of proximate cause," *Defs.' Reply* at 2, may just be crucial in a jury's determination of whether a personal liability defense would succeed. These facts speak directly to

issues of knowledge and notice that underpin determinations of agent liability to third parties in disclosed principal situations. Those issues of course impact whether a defense about personal liability would succeed and whether if raised, it could or would have led to a more favorable result for Mr. DeLeo. The Jones Defendants seem to accept as much as they contend that "the most critical and arguably only facts this Court need consider are those related to the Employment agreement." *Defs.' Reply* at 2. But whom Mr. Vegnani sues when making an employment claim and who issued him forms typically sent by an employer speak to understandings of Mr. Vegnani and Mr. DeLeo, or what their understandings reasonably were, about whether Mr. DeLeo entered the agreement as agent or principal. As such, they are relevant to Mr. DeLeo meeting his burden of establishing that Ms. Jones was "negligent or otherwise failed to the meet the standard of care," *McLellan*, 115 N.E. at 482, and whether Attorney Jones having done so would have led to a more favorable outcome for Mr. DeLeo.

It follows that they are pertinent evidence to issues "that a factfinder could resolve in favor of the nonmovant," and which have the "potential to change the outcome of the suit." *Green Mountain Realty*, 750 F.3d at 38. Similarly, they represent "enough competent evidence to enable a factfinder to decide in [the nonmoving party's] favor on the disputed claim." *Carroll*, 294 F.3d at 237 (internal quotations omitted). In turn, these are factual issues to be determined by a jury, not the Court at the summary judgment stage.

## V.      SUMMARY

The Court concludes that viewing the facts in the light most favorable to Mr. DeLeo as the nonmovant, as it must, he has alleged sufficient facts to plausibly support a claim of attorney malpractice.  For that reason, the Jones Defendants have not met their burden of demonstrating that Mr. DeLeo could not possibly prove a legal malpractice claim.  As follows, the Jones Defendants are not entitled to summary judgment and their motion must be denied.

## VI.     CONCLUSION

The Court DENIES Miranda S. Jones, Esq. & O'Reilly, Grosso, Gross & Jones, P.C.'s Motion for Summary Judgment (ECF No. 33).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 25th day of March, 2024